# EXHIBIT A

**EXECUTION COPY**

SETTLEMENT AGREEMENT, dated as of December 20, 2016 ("Settlement Agreement")
between General Motors LLC as successor to General Motors Co. ("**New GM**" or "**GMCo**"), the
IUE-CWA, the Industrial Division of the Communications Workers of America, AFL-CIO, CLC
(the "**IUE-CWA**"), and Larry E. Short, Leslie Cash, and Gary Robinson ("**Individual
Plaintiffs**," and with New GM and IUE-CWA, the "**Parties**").

WHEREAS, on or about September 3, 2009, New GM, the IUE-CWA and others, entered into a
Settlement Agreement ("**2009 Agreement**"), pursuant to which, among other things, New GM
agreed to provide health care benefits to certain eligible pre-65 retirees represented by the
Splinter Unions (as defined in the 2009 Agreement);

WHEREAS, in calendar year 2015, a dispute arose between the New GM and the IUE-CWA
regarding certain provisions of the 2009 Agreement relating to health care benefits for eligible
retirees and, on or about October 30, 2015, the IUE-CWA and the Individual Plaintiffs
commenced an adversary proceeding against New GM in the Bankruptcy Court for the Southern
District of New York ("**Bankruptcy Court**"), known as *IUE-CWA v. General Motors Co.*, Adv.
Pro. No. 15-01389 ("**Adversary Proceeding**");

WHEREAS, in the Adversary Proceeding, among other things, (a) the Parties agreed to bifurcate
the claims asserted by the Plaintiffs[1] therein against New GM, and first address whether the
Aggregate Net Present Value[2] in the 2009 Agreement provided for a maximum spend obligation
or a mandatory spend obligation on New GM ("**Threshold Issue**"); (b) New GM filed a motion
to dismiss the claim related to the Threshold Issue, and the IUE-CWA cross-moved for summary
judgment on the Threshold Issue ("**Dispositive Motions**"); and (c) after a September 13, 2016
Bankruptcy Court hearing on the Dispositive Motions, but before any decision was made by the
Bankruptcy Court with respect thereto, the Parties entered into good faith settlement discussions
to resolve all issues related to the Adversary Proceeding and, in general, all disputes relating to
New GM's obligation under the 2009 Agreement to provide health care benefits to eligible pre-
65 retirees represented by the Splinter Unions;

WHEREAS, the settlement discussions were successful and the Parties have agreed to avoid
further costs and risks of litigation by conclusively resolving all of their disputes pursuant to the
terms set forth below;

NOW, THEREFORE, the Parties agree as follows:

---

[1] "Plaintiffs," as used herein, shall mean the IUE-CWA and the Individual Plaintiffs.

[2] Capitalized terms used in this Settlement Agreement, and not otherwise defined herein, shall have the meanings
ascribed to them in the 2009 Settlement Agreement.

**EXECUTION COPY**

1. **Effect on 2009 Agreement.** Unless otherwise expressly provided for herein, the terms of the 2009 Agreement shall remain unmodified and in full force and effect.

2. **Bankruptcy Court Approval.** This Settlement Agreement is expressly conditioned upon the approval of the Bankruptcy Court having jurisdiction over the Adversary Proceeding. The Parties agree to cooperate with each other in securing the Bankruptcy Court's approval of this Settlement Agreement.

3. **Effective Date.** This Settlement Agreement shall become effective ("**Effective Date**") when it is approved by a "final and non-appealable"[3] order of the Bankruptcy Court having jurisdiction over the Adversary Proceeding. The order approving this Settlement Agreement shall be in substantially the form annexed hereto as **Exhibit "A"**.

4. **Dismissal of Adversary Proceeding.** Within 3 business days after the Effective Date, counsel for the Plaintiffs in the Adversary Proceeding shall dismiss, with prejudice and without costs, the Adversary Proceeding. The IUE-CWA and the Individual Plaintiffs agree not to bring any claims relating to or arising out of health care benefits provided for eligible pre-65 retirees under the 2009 Agreement, except to the extent this Settlement Agreement expressly preserves their rights with respect to the calendar year commencing January 1, 2017 and thereafter.

5. **Release.** On the Effective Date, in exchange for good and valuable consideration received by the IUE-CWA and the Individual Plaintiffs, including without limitation the provisions of this Settlement Agreement, the IUE-CWA, on behalf of itself, its former or current members (including the Individual Plaintiffs), retirees, officers, directors, attorneys, successors and assigns, and the Individual Plaintiffs, on behalf of themselves and their descendants, dependents, heirs, executors, attorneys, administrators, successors and assigns (collectively, the "**Releasors**"), release and forever discharge New GM, and its current or former officers, directors, managers, employees, agents, attorneys, direct and indirect parents and subsidiaries, affiliates, and their employee benefit plans and their fiduciaries (collectively, the "**Releasees**") with respect to any and all rights, claims or causes of action that any Releasors had, have or hereafter may have, whether known or unknown, suspected or unsuspected, concealed or hidden arising out of, based upon or otherwise related to any claim, demand or cause of action arising out of or related to or which could have been brought in the Adversary

---

[3] "Final and non-appealable" shall mean, with respect to an order of the Bankruptcy Court, that (i) the time to appeal or petition for certiorari has expired and no timely appeal or petition for certiorari shall then be pending, or (ii) if a timely appeal or writ of certiorari has been sought, the order shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing on remand shall have been denied or resulted in no material modification of such Order, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired

**EXECUTION COPY**

Proceeding, including without limitation any claim, demand or cause of action that arises out of, or is based upon the health care benefits for eligible pre-65 retirees under the 2009 Agreement through the plan year ending on December 31, 2016. Any Splinter Union that executes the Joinder to this Settlement Agreement (**Exhibit "B"** hereto) ("**Joinder**") shall be deemed a Party to this Settlement Agreement and will be bound by all of the provisions hereof to the same extent as the IUE-CWA and the Individual Plaintiffs. Among other things, that means that a Splinter Union that signs the Joinder shall be deemed a "Releasor" on behalf of itself, its former or current members, retirees, officers, directors, attorneys, successors and assigns, and shall agree not to bring any claims relating to health care benefits provided for in the 2009 Agreement, except to the extent expressly preserved by this Settlement Agreement with respect to the calendar year commencing January 1, 2017 and thereafter.

6. **Covenant Not to Sue Releasees.** Releasors agree never to file, commence, or participate in any legal proceeding against the Releasees with respect to any claim encompassed within the Release set forth herein or as set forth in the 2009 Agreement. Releasors further stipulate and agree that, if such a suit is filed, the Court (or any other tribunal) hearing such matter shall immediately dismiss any such suit filed on its behalf with prejudice and that any appeal or other attempt to seek judicial review of the dismissal shall also be dismissed immediately with prejudice. Notwithstanding anything to the contrary, Releasors acknowledge and agree that any breach of this covenant not to sue will cause irreparable harm to Releasees and therefore agree that Releasees shall be entitled to available equitable remedies, including, without limitation, injunctive relief upon breach of this covenant not to sue.

7. **Condition Precedent: Joinder of Other Splinter Unions.** This Settlement Agreement shall be of no force or effect unless, prior to the Effective Date, Splinter Unions that are parties to the 2009 Agreement representing not less than 98% of the participants who are then participating in or can become eligible for retiree medical benefits under the 2009 Agreement sign this Settlement Agreement or the Joinder.

8. **No Admission of Liability.** This Settlement Agreement shall not be deemed, construed or interpreted as a New GM admission of liability or that New GM breached the 2009 Settlement Agreement in connection with the provision of pre-65 retiree health care benefits; in fact, New GM expressly denies such liability.

9. **Amendment to 2009 Agreement.** As of the Effective Date, the 2009 Agreement will be deemed amended, for the period commencing January 1, 2017 and thereafter, as follows[4]:

---

[4] It is the intent of the Parties that this amendment of the 2009 Agreement constitutes a modification of retiree benefits pursuant to Section 1114(g) of the Bankruptcy Code.

3

**EXECUTION COPY**

a.  The first sentence of Paragraph 5(b) of the 2009 Agreement is deleted, and the
following sentence shall be inserted in its place:

GMCo's obligation to make contributions toward retiree health care under this Plan
after January 1, 2017 shall be fixed and capped at the following specified level of
expenditures on a combined average annual cost per contract basis for single,
individual-plus-one and family coverage (the "**Cap**"):

   i.  for the Plan years 2017 and for each Plan year thereafter, $8,291; *provided,*
   *however,* that the Plan design for the Plan year commencing January 1,
   2017 shall be as described in Section 5(j), and, *provided further* that the Plan
   design for Plan years commencing January 1, 2018 and January 1, 2019
   shall be as described in Section 5(l).  GMCO will meet with the advisory
   committee described in Section 5(e) in March of 2019, or at such other time
   as agreed to by the parties, to discuss Plan design for the Plan year
   commencing January 1, 2020, and GMCO will take into consideration
   (without any obligation to adhere to) the preferences of the unions in
   developing Plan design for the 2020 Plan year and specifically the
   relationship of premium expenses, deductibles and maximum out-of-pocket
   expenses.

b.  The third and fourth sentences of Paragraph 5(b) of the 2009 Agreement are deleted,
and the following sentences shall be inserted in its place:

The retiree health care benefits under this Plan will be delivered by GMCo over time,
subject to the Cap, and the limitation on GMCo's total spending obligation for retiree
health care benefits under this Plan (i.e., the Aggregate Net Present Value) shall be
reduced by amounts paid pursuant to Paragraphs 5(f) and 5(k) hereof ("Adjusted
Value").  It is expressly understood that GMCo never had, and shall have no
obligation to spend the Adjusted Value.  Rather, the Adjusted Value is only a
limitation on GMCo's total obligation for retiree health care benefits under this Plan,
and if the Adjusted Value is exhausted, GMCo shall have no further obligation for
retiree health care benefits under this Plan.

c.  The following two sentences in Paragraph 5(c) of the 2009 Agreement are deleted:

"Thereafter, GMCo will analyze and project retiree health care expenses on an
annual basis, net of any additional opt-out related savings from the previous year and
excluding any annual savings associated with those who previously opted-out but
have since attained 65 years of age, at which time the participant would have lost

4

EXECUTION COPY

eligibility for Retiree Health Care benefits under this Settlement Agreement. GMCo will adjust the Plan design as necessary to maintain benefit coverages within the Cap on an aggregate basis across both pre-Medicare single and pre-Medicare family coverage without reduction in the aggregate amount of annual Cap expenditures caused by the participant's loss of eligibility to participate for reasons other than mortality or Medicare eligibility, at which time the participant would have lost eligibility for Retiree Health Care Benefits under this Settlement Agreement."

The following sentence should be inserted in its place.

"Commencing with January 1, 2012, and for each year thereafter, GMCo will analyze and project retiree health care expenses on an annual basis and will adjust the Plan design as necessary to maintain benefit coverages within the Cap."

d. Paragraph 5(d) is deleted, and the following is inserted in its place as the amended Paragraph 5(d):

GMCo will bear all costs of (i) Plan administration, including any changes thereto resulting from this Settlement Agreement; (ii) any HRA-type replacement plan (as more fully described in new paragraph 5(k) of the 2009 Agreement) and/or (iii) administration of any buy-out of GMCo's obligations under the Plan (as more fully described in new paragraph 5(k) of the 2009 Agreement).

e. Paragraph 5(g) is deleted, and the following is inserted in its place as the amended Paragraph 5(g):

The Parties agree that GMCo shall have the right to modify or amend the Plan design consistent with its effort to implement the Cap.

f. Paragraph 5(j) is added to the 2009 Agreement as follows:

For 2017 (plan year beginning January 1, 2017 and ending December 31, 2017), GMCo will configure Plan design such that the aggregate annual premium, deductible and out of pocket maximum values are equivalent to the values in the Plan design in effect for the Plan year beginning January 1, 2016. Due to timing issues, GMCo will initially implement a higher level of premiums for the Plan period beginning January 1, 2017, but will, as soon as possible thereafter, adjust premiums for continuing participants such that annualized participant expenditures for the Plan year beginning

5

**EXECUTION COPY**

January 1, 2017 are equivalent to the Plan design in effect for the Plan year beginning
January 1, 2016.

g.  Paragraph 5(k) is added to the 2009 Agreement as follows:

Subject to GMCo's contributions to retiree health care reaching the Adjusted Value,
upon the occurrence of the first of: (i) commencement of the Plan year 2027, or (ii)
commencement of the first Plan year in which the total number of the contracts in the
Plan falls below 500, GMCo may implement, in its sole discretion, either of, or a
combination of both of, the following:

(i)    GMCo will convert the Plan to a Health Reimbursement Arrangement
("HRA")-type tax advantaged health-reimbursement account (depending on the
legal reimbursement options then available for retiree plans), and will contribute
the amount of $8,000 per active contract per Plan year to, if then available, a
tax-advantaged account; or

(ii)    GMCo will offer to buy out the remaining participant contracts by offering
the participant the present-value actuarial equivalent of the HRA-type Plan
described in Paragraph 5(k)(i) above for the number of years for which they will
remain eligible for benefits under the Plan, up to a maximum of 10 years
(except for active employees of GMCo as of the effective date of this
Agreement who do not elect to receive the buyout described in Section 5(f), for
whom the maximum years will be 14), conditioned upon Participants' executing
full releases of claims satisfactory to GM.  To accomplish this, GMCo will pay
a one-time lump sum payment per active contract equal to the present value of
the payments that would be made under Paragraph 5(k)(i) above for the period
of time that the youngest of the primary participant or their spouse (or surviving
spouse in the event of the primary participant's death) would be covered under
the retiree health care Plan, to a maximum of 10 years.  For those who are
retirement-eligible, but who have not yet commenced participation in the retiree
health care Plan, GMCo will make a one-time lump sum payment equal to the
present value of the payments that would be made under Paragraph 5(k)(i)
above for the period of time that the youngest of the primary participant or their
spouse (or surviving spouse in the event of the primary participant's death)
would be covered under the retiree health care Plan, up to a maximum of ten 10
years.  For those participants who have not yet attained eligibility for retirement,
GMCo will make a one-time lump sum payment equal to the present value of up
to 10 years of payments that would have been made under Paragraph 5(k)(i)
above had the participant commenced receipt of benefits under the Plan.

**EXECUTION COPY**

Notwithstanding the foregoing, for those participants who have not yet attained eligibility for retirement but who have been continuously employed by GMCo and are active employees at the time of the events described in this paragraph 5(k), GMCo will make a one-time lump sum payment equal to the present value of up to 14 years of payments that would have been made under Paragraph 5(k)(i) above had the participant commenced receipt of benefits under the Plan. For purposes of calculating the present value, the discount rate shall be calculated as of the last business day of the year, and shall be the same rate that is used by GMCo's actuary to measure the Accumulated Post-Retirement Benefit Obligation for the non-UAW Retiree Health Care Plan.

h.    Paragraph 5(l) is added to the 2009 Agreement as follows:

The Plan design for Plan years 2018 and 2019 shall include the following:

2018 (in dollars)

| | Indiv | Indiv + 1 | Fam |
|---|---|---|---|
| Premiums (monthly) | 51 | 103 | 154 |
| Deductible | 3,000 | 6,000 | 6,000 |
| Out of Pocket Maximums | 4,000 | 8,000 | 8,000 |

2019 (in dollars)

| | Indiv | Indiv + 1 | Fam |
|---|---|---|---|
| Premiums (monthly) | 79 | 159 | 238 |
| Deductible | 3,000 | 6,000 | 6,000 |
| Out of Pocket Maximums | 4,000 | 8,000 | 8,000 |

The Plan design for Plan year 2020 and for each Plan year thereafter shall be subject to the limits of the Cap, and reflect the adjustment required to be made to Plan design by Paragraph 5(c) hereof, in the event GMCo has spent more than the Cap; provided further, it is understood that in no event shall GMCo's spending obligation under the Plan exceed the Adjusted Value.[5]

---

[5] For sake of clarity, paragraph 5 of the 2009 Agreement, as amended by this Settlement Agreement, is annexed hereto as Exhibit "C".

EXECUTION COPY

GMCo will amend or cause to be amended the Plan documents to the extent necessary to implement these changes, to the extent it deems such changes necessary, in its sole and complete discretion.

10. **Attorney Fees.** GMCo will reimburse counsel for Plaintiffs in the Adversary Proceeding for its substantiated and reasonable attorney's fees and costs incurred in connection with the Adversary Proceeding and the settlement thereof, provided that such amount shall not exceed, in the aggregate, $500,000. GMCo will provide the funds to Kennedy, Jennik & Murray, P.C. within five (5) business days of the Effective Date and the receipt of a completed W-9 form.

11. **Disputes and Jurisdiction.** Any controversy or dispute arising out of or relating to, or involving the enforcement, implementation, application or interpretation of this Settlement Agreement may be asserted only by the Parties hereto or the Releasees. No other person, including any member or former member of the Splinter Unions has any right to seek enforcement, implementation, application or interpretation of this Settlement Agreement, or make any claim under the 2009 Settlement Agreement or this Settlement Agreement. The Order approving this Settlement Agreement will provide that the Bankruptcy Court will retain jurisdiction to resolve any disputes regarding the enforcement, implementation, application, or interpretation of this Settlement Agreement. In the event that the bankruptcy case has been closed or dismissed, the parties agree that any necessary litigation to resolve such disputes shall be brought before the United States District Court for the Eastern District of Michigan ("Court"). Each of the parties hereto expressly and irrevocably submits to the jurisdiction of the Bankruptcy Court or the Court, as applicable, and expressly waives any argument it may have with respect to venue or forum non conveniens.

12. **Free and Voluntary Act.** The Parties expressly acknowledge that they have carefully read the terms of this Settlement Agreement, that they have had an opportunity to consult with counsel of their own choosing before signing this Settlement Agreement, that they have had a reasonable period of time within which to consider this Settlement Agreement, and that they have signed this Settlement Agreement knowingly, voluntarily and freely, and with such counsel as deemed appropriate.

13. **Entire Agreement.** This Settlement Agreement constitutes the entire agreement between the Parties regarding the matters set forth herein, and no representations, warranties, or inducements have been made to any party concerning this Settlement Agreement, other than representations, warranties and covenants contained and memorialized in this Settlement Agreement.

EXECUTION COPY

14. **Counterparts.** This Amended Settlement Agreement may be executed in two or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the parties to this Settlement Agreement shall exchange among themselves original signed counterparts.

15. **Assignment.** Except as otherwise expressly stated herein, no Party to this Settlement Agreement may assign any of its rights hereunder without the prior written consent of the other Parties, and any purported assignment in violation of this sentence shall be void. This Settlement Agreement shall be binding and inure to the benefit of the Parties hereto and their respective successors and assigns.

16. **Cooperation of the Parties & Execution.** Each of the Parties hereto shall do any and all acts and things, and shall execute and deliver any and all documents, as may be necessary or appropriate to effectuate the purposes of this Settlement Agreement.

17. **Third-Party Beneficiaries.** This Settlement Agreement is for the benefit of the Parties hereto and confers no third party beneficiary rights on any other person (except for Releasees who are entitled to the benefits provided to them in this Settlement Agreement).

18. **Capacity and Authority.** Each of the Parties represents to the other that the person signing this Settlement Agreement is authorized to do so and perform the acts provided for herein, and upon the Effective Date, this Settlement Agreement shall be a binding obligation on them.

IN WITNESS THEREOF, the parties have caused this Settlement Agreement to be executed by themselves or their duly authorized attorneys.


AGREED

General Motors LLC                    Date: 12/21       , 2016

By _____

IUE-CWA, the Industrial Division
Of the Communications Workers
Of America, AFL-CIO, CLC


By: _____      Date: _____, 2016

**EXECUTION COPY**

14. **Counterparts.** This Amended Settlement Agreement may be executed in two or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the parties to this Settlement Agreement shall exchange among themselves original signed counterparts.

15. **Assignment.** Except as otherwise expressly stated herein, no Party to this Settlement Agreement may assign any of its rights hereunder without the prior written consent of the other Parties, and any purported assignment in violation of this sentence shall be void. This Settlement Agreement shall be binding and inure to the benefit of the Parties hereto and their respective successors and assigns.

16. **Cooperation of the Parties & Execution.** Each of the Parties hereto shall do any and all acts and things, and shall execute and deliver any and all documents, as may be necessary or appropriate to effectuate the purposes of this Settlement Agreement.

17. **Third-Party Beneficiaries.** This Settlement Agreement is for the benefit of the Parties hereto and confers no third party beneficiary rights on any other person (except for Releasees who are entitled to the benefits provided to them in this Settlement Agreement).

18. **Capacity and Authority.** Each of the Parties represents to the other that the person signing this Settlement Agreement is authorized to do so and perform the acts provided for herein, and upon the Effective Date, this Settlement Agreement shall be a binding obligation on them.

IN WITNESS THEREOF, the parties have caused this Settlement Agreement to be executed by themselves or their duly authorized attorneys.

AGREED

General Motors LLC                    Date:_____, 2016

By: _____

IUE-CWA, the Industrial Division
Of the Communications Workers
Of America, AFL-CIO, CLC

By: _____    Date:_12/21_____, 2016

9

**EXECUTION COPY**

Larry E. Short

By: _(signature)_     Date: _12/22_ , 2016

Leslie Cash

By: _(signature)_     Date: _12/21_ , 2016

Gary Robinson

By: _(signature)_     Date: _12/22_ , 2016

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------x
In re:                                      :   Chapter 11
                                            :
MOTORS LIQUIDATION COMPANY, et al.,         :   Case No.: 09-50026 (MG)
         f/k/a General Motors Corp., et al. :
                                            :   (Jointly Administered)
                Debtors.                    :
-----------------------------------------------------------x
IUE-CWA, INDUSTRIAL DIVISION OF THE         :
COMMUNICATION WORKERS OF AMERICA,           :
AFL-CIO and LARRY E. SHORT, LESLIE CASH,    :
and GARY ROBINSON on behalf of themselves,  :
and all others similarly situated,          :   Adv. Proc. No.: 15-01389 (MG)
                                            :
                Plaintiffs,                 :
                                            :
        -v-                                 :
                                            :
GENERAL MOTORS CO.,                         :
                                            :
                Defendant.                  :
-----------------------------------------------------------x
```

## ORDER APPROVING A SETTLEMENT AGREEMENT AMONG
## GENERAL MOTORS CO., THE PLAINTIFFS, AND OTHER SPLINTER UNIONS

This matter is before the Court upon the joint motion ("Motion") of General Motors Co.

("New GM" or "GMCo"), the IUE-CWA, the Industrial Division of the Communications

Workers of America, AFL-CIO, CLC (the "IUE-CWA"), and Larry E. Short, Leslie Cash, and

Gary Robinson ("Individual Plaintiffs," and with New GM and IUE-CWA, the "Parties") for

entry of an order, pursuant to Sections 105 and 1114(g) of Title 11 of the United States Code,

approving a Settlement Agreement, a copy of which is attached hereto as Exhibit A (the

"Settlement Agreement"), to resolve all issues between the Parties related to the above-captioned

adversary proceeding.

The Court having found that the Court has jurisdiction to consider the Motion and the

relief requested therein, and the Settlement Agreement and the relief requested in the Motion are

fair and equitable,

NOW THEREFORE IT IS HEREBY ORDERED that the Motion is GRANTED and the

Settlement Agreement, a copy of which is attached hereto as Exhibit A, is APPROVED in all

respects; and

IT IS FURTHER ORDERED that pursuant to Section 1114(g) of the Bankruptcy Code,

this Court approves the amendments to the 2009 Agreement[1] that are set forth in the Settlement

Agreement as appropriate modifications to the payment of retiree benefits; and

IT IS FURTHER ORDERED that this Court construes the 2009 Agreement to provide

that the Aggregate Net Present Value is a maximum spend obligation on New GM, and not a

mandatory spend obligation; and

IT IS FURTHER ORDERED THAT this Court shall retain jurisdiction over any and all

matters arising from or related to the interpretation or implementation of the Settlement

Agreement and of this Order.

Dated: New York, New York

_____ __,_ _____

_____
UNITED STATES BANKRUPTCY JUDGE
UNITED STATES BANKRUPTCY COURT

---

[1] Terms used herein and not otherwise defined shall have the meanings ascribed to them in the
Settlement Agreement.

2

EXHIBIT B

## JOINDER AGREEMENT

This JOINDER AGREEMENT, dated as of December 20, 2016 ("**Joinder Agreement**"), is entered into pursuant to the Settlement Agreement, dated as of December 20, 2016 ("**Settlement Agreement**"), between General Motors LLC as successor to General Motors Co. ("**New GM**" or "**GMCo**"), the IUE-CWA, the Industrial Division of the Communications Workers of America, AFL-CIO, CLC (the "**IUE-CWA**"), and Larry E. Short, Leslie Cash, and Gary Robinson ("**Individual Plaintiffs**," and with New GM and IUE-CWA, the "**Parties**").[1]

WHEREAS, the party hereto is a labor organization; and

WHEREAS, the party hereto has served and continues to serve as the authorized representative for purposes of Section 1114 of the Bankruptcy Code, 11 U.S.C. § 1114, of those retirees, surviving spouses, and other dependents receiving retiree benefits pursuant to collective bargaining agreements between itself and GMCo or its predecessors; and

WHEREAS, the party hereto wishes to enter into the Settlement Agreement and be deemed as one of the Parties thereto;

NOW, THEREFORE, it is agreed as follows:

1. **Joinder to the Settlement Agreement**. The party hereto confirms that it has received a copy of the Settlement Agreement and such other documents and information as it has deemed appropriate to make its own decision to enter into this Joinder Agreement and agrees to:

(a) join and become a Party to the Settlement Agreement;

(b) be bound by all of the provisions of the Settlement Agreement to the same extent as the IUE-CWA and the Individual Plaintiffs; and

(c) be deemed a "Releasor" on behalf of itself, its former or current members, retirees, officers, directors, attorneys. successors and assigns, and shall agree not to bring any claims relating to health care benefits provided for in Paragraph 5 of the 2009 Agreement, except to the extent expressly preserved by this Settlement Agreement with respect to the calendar year commencing January 1, 2017 and thereafter.

2. **Effective Date**. Upon execution, the party hereto shall promptly provide delivery of an executed copy of this Joinder Agreement to counsel for the Parties to the Adversary Proceeding. This Joinder Agreement shall become effective upon delivery to counsel.

---

[1] Capitalized terms used in this Joinder Agreement, and not otherwise defined herein, shall have the meanings ascribed to them in the Settlement Agreement.

3. **Disputes and Jurisdiction.** Any controversy or dispute arising out of or relating to, or involving the enforcement, implementation, application or interpretation of this Joinder Agreement may be asserted only to extent permitted by the Settlement Agreement.

4. **Capacity and Authority.** The party hereto, as the authorized representative for purposes of Section 1114 of the Bankruptcy Code, 11 U.S.C. § 1114, of those retirees, surviving spouses, and other dependents receiving retiree benefits pursuant to collective bargaining agreements between itself and GMCo or its predecessors, represents that the person signing this Joinder Agreement is authorized to do so and perform the acts provided for herein, and upon the effective date set forth in Paragraph 2 of this Joinder Agreement, this Joinder Agreement shall be a binding obligation on the party hereto.

IN WITNESS THEREOF, the party hereto has caused this Joinder Agreement to be executed by itself or its duly authorized attorneys.

By: _____

Name: David R. Jury

Title: Associate General Counsel
United Steelworkers

---

**EXHIBIT B**

---

## JOINDER AGREEMENT

This JOINDER AGREEMENT, dated as of December ___, 2016 ("**Joinder Agreement**"), is entered into pursuant to the Settlement Agreement, dated as of December 20, 2016 ("**Settlement Agreement**"), between General Motors LLC as successor to General Motors Co. ("**New GM**" or "**GMCo**"), the IUE-CWA, the Industrial Division of the Communications Workers of America, AFL-CIO, CLC (the "**IUE-CWA**"), and Larry E. Short, Leslie Cash, and Gary Robinson ("**Individual Plaintiffs**," and with New GM and IUE-CWA, the "**Parties**").[1]

WHEREAS, the party hereto is a labor organization; and

WHEREAS, the party hereto has served and continues to serve as the authorized representative for purposes of Section 1114 of the Bankruptcy Code, 11 U.S.C. § 1114, of those retirees, surviving spouses, and other dependents receiving retiree benefits pursuant to collective bargaining agreements between itself and GMCo or its predecessors; and

WHEREAS, the party hereto wishes to enter into the Settlement Agreement and be deemed as one of the Parties thereto;

NOW, THEREFORE, it is agreed as follows:

1. **Joinder to the Settlement Agreement.** The party hereto confirms that it has received a copy of the Settlement Agreement and such other documents and information as it has deemed appropriate to make its own decision to enter into this Joinder Agreement and agrees to:

    (a) join and become a Party to the Settlement Agreement;

    (b) be bound by all of the provisions of the Settlement Agreement to the same extent as the IUE-CWA and the Individual Plaintiffs; and

    (c) be deemed a "Releasor" on behalf of itself, its former or current members, retirees, officers, directors, attorneys, successors and assigns, and shall agree not to bring any claims relating to health care benefits provided for in Paragraph 5 of the 2009 Agreement, except to the extent expressly preserved by this Settlement Agreement with respect to the calendar year commencing January 1, 2017 and thereafter.

2. **Effective Date.** Upon execution, the party hereto shall promptly provide delivery of an executed copy of this Joinder Agreement to counsel for the Parties to the Adversary Proceeding. This Joinder Agreement shall become effective upon delivery to counsel.

---

[1] Capitalized terms used in this Joinder Agreement, and not otherwise defined herein, shall have the meanings ascribed to them in the Settlement Agreement.

3. **Disputes and Jurisdiction**. Any controversy or dispute arising out of or relating to, or involving the enforcement, implementation, application or interpretation of this Joinder Agreement may be asserted only to extent permitted by the Settlement Agreement.

4. **Capacity and Authority**. The party hereto, as the authorized representative for purposes of Section 1114 of the Bankruptcy Code, 11 U.S.C. § 1114, of those retirees, surviving spouses, and other dependents receiving retiree benefits pursuant to collective bargaining agreements between itself and GMCo or its predecessors, represents that the person signing this Joinder Agreement is authorized to do so and perform the acts provided for herein, and upon the effective date set forth in Paragraph 2 of this Joinder Agreement, this Joinder Agreement shall be a binding obligation on the party hereto.

IN WITNESS THEREOF, the party hereto has caused this Joinder Agreement to be executed by itself or its duly authorized attorneys.

By: _____

Name: William Rudis

Title: CLR

12/21/16

## EXHIBIT C

### 2009 Agreement, Amended Paragraph 5

5. <u>Retiree Health Care Benefits - On and After January 1, 2010</u>. For claims incurred on or after
January 1, 2010, GMCo will provide retiree health care to eligible IUE-CWA or USW retirees as
follows and MLC shall have no liability or responsibility thereafter:

    a. GMCo will create a separate retiree health care plan with participation limited to eligible
IUE-CWA and USW retirees and retirees affiliated with other Splinter Unions where
those Splinter Unions elect, on a union-by-union basis, to participate on behalf of retirees
and members who are similarly situated to the Covered Group with respect to health care
in retirement and to be bound by the terms of a settlement agreement related to retiree
health care and life insurance equivalent to those contained in this Settlement Agreement.
It is understood that Splinter Union retirees are not eligible for the Pension Top-Up or
Up-To-7 Years Accrual as contemplated by this Settlement Agreement. The term
"Splinter Union" as used in this Settlement Agreement shall include the following,
including any predecessor unions where applicable:

        i. International Association of Machinists and Aerospace Workers;

        ii. International Brotherhood of Electrical Workers;

        iii. Michigan Regional Council of Carpenters, Local 687 and Interior Systems,
Local 1045;

        iv. International Brotherhood of Painters and Allied Trades of the United States and
Canada, Sign & Display Union Local 59;

        v. International Brotherhood of Teamsters;

        vi. The International Brotherhood of Boilermakers;

        vii. International Union of Operating Engineers;

        viii. United Catering Restaurant Bar & Hotel Workers; and

        ix. With respect to any Splinter Union retirees where the union has failed or refused
to accept appointment as the authorized representative pursuant to 11 USC § 1114, any
committee appointed by the Bankruptcy Court as the authorized representative of such
Splinter Union retirees.

    b. GMCo's obligation to make contributions toward retiree health care under this Plan after
January 1, 2017 shall be fixed and capped at the following specified level of expenditures
on a combined average annual cost per contract basis for single, individual-plus-one and
family coverage (the "Cap"):

        i. for the Plan years 2017 and for each Plan year thereafter, $8,291; *provided,
however,* that the Plan design for the Plan year commencing January 1, 2017 shall
be as described in Section 5(j), and, *provided further* that the Plan design for Plan

years commencing January 1, 2018 and January 1, 2019 shall be as described in Section 5(l). GMCO will meet with the advisory committee described in Section 5(e) in March of 2019, or at such other time as agreed to by the parties, to discuss Plan design for the Plan year commencing January 1, 2020, and GMCO will take into consideration (without any obligation to adhere to) the preferences of the unions in developing Plan design for the 2020 Plan year and specifically the relationship of premium expenses, deductibles and maximum out-of-pocket expenses.

The total value of health care benefits under this Settlement Agreement, inclusive of benefits paid under Paragraph 4 of this Settlement Agreement, is limited to an aggregate net present benefit value of $467 million ("Aggregate Net Present Value") with respect to all eligible IUE-CWA, USW and Splinter Union participants. The retiree health care benefits under this Plan will be delivered by GMCo over time, subject to the Cap, and the limitation on GMCo's total spending obligation for retiree health care benefits under this Plan *(i.e., the Aggregate Net Present Value) shall be reduced by amounts paid pursuant to Paragraphs 5(f) and 5(k) hereof ("Adjusted Value"). It is expressly understood that GMCo never had, and shall have no obligation to spend the Adjusted Value. Rather, the Adjusted Value is only a limitation on GMCo's total obligation for retiree health care benefits under this Plan, and if the Adjusted Value is exhausted, GMCo shall have no further obligation for retiree health care benefits under this Plan. Spending against the Aggregate Net Present Value shall be determined by recording the annual health care benefit expenditures pursuant to this Settlement Agreement discounted at a rate of 7.2%. Participant contributions are not counted against the Aggregate Net Present Value and are not counted as part of the Caps in any year. At the point in time where GMCo's total amount paid reaches the Adjusted Value GMCo shall cease making any contributions toward health care for the Covered Group or covered members of Splinter Unions that elect to participate regardless of whether such participants otherwise satisfy plan eligibility criteria.

c.  The Aggregate Net Present Value was determined based upon an expected 92% rate of participation, resulting in a plan design generally in accordance with the description contained on Attachment A. Both the IUE-CWA and USW believe that the actual rate of participation will be less than 92%. The IUE-CWA and USW believe that a conservative estimate of the expected rate of participation is 82%. Therefore, GMCo agrees that it initially will configure plan design generally in accordance with the description contained on Attachment A, except that GMCo will presume a participant acceptance rate of 82% for IUE-CWA, USW and Splinter Unions that elect to participate and adjust the participant monthly contribution for 2010 to account for the estimated annual savings associated with the additional anticipated 10% of eligible participants that decline participation in the plan as offset by amounts paid to participants electing to opt-out. For 2011, after accounting for anticipated increases or decreases in health care costs, GMCo will determine the actual opt-out savings and actual amount of opt-out payments that occurred during the 2010 plan year and will adjust the 2011 plan design any differences resulting from an over or under estimation of the rate of participation or level of opt-out savings that occurred in 2010. Commencing with January 1, 2012, and for each year thereafter, GMCo will analyze and project retiree health care expenses on an annual basis and will adjust the Plan design as necessary to maintain benefit coverages within the Cap. For the avoidance of doubt,

otherwise eligible individuals will no longer be eligible for Retiree Health Care Benefits under this Settlement Agreement upon attainment age 65 or if under age 65 upon becoming Medicare eligible, subject to rules governing end stage renal disease. For periods in which the Cap is exceeded, GMCo will make whatever plan design changes it deems necessary to recover the overpayment in the next plan year as well as to adjust for any anticipated increases in retiree health care costs in the next year. For periods in which the Cap has not been reached, GMCo will make whatever plan design changes it deems necessary to increase benefit levels to the extent of the Cap so they are distributed in the next plan year after adjusting for any anticipated increases in retiree health care costs in the next year.

d.  GMCo will bear all costs of (i) Plan administration, including any changes thereto resulting from this Settlement Agreement; (ii) any HRA-type replacement plan (as more fully described in new paragraph 5(k) of the 2009 Agreement) and/or (iii) administration of any buy-out of GMCo's obligations under the Plan (as more fully described in new paragraph 5(k) of the 2009 Agreement).

e.  The IUE-CWA and USW may create an advisory committee and appoint members thereof; such advisory committee shall also include representatives of other Splinter Unions that have elected participation in accordance with this Settlement Agreement who wish to participate and who appoint their own representative members. If created, GMCo will advise the advisory committee reasonably prior to the implementation of any such adjustments of anticipated plan design adjustments deemed necessary to maintain benefit coverages within the Cap along with its rationale for any such adjustments. The advisory committee may provide advice and counsel with respect to any such adjustments, provided that GMCo may in its sole discretion accept or reject any such advice and that the process of involving the advisory committee shall not delay the ordinary and customary implementation of plan design alterations deemed necessary by GMCo to reflect the constraints of the Cap. The creation and operation of the advisory committee shall be at the expense of the unions participating in such committee and GMCo shall have no obligation to pay or to defray any cost or expense associated with creation of the committee or its operations or activities.

f.  Prior to January 1, 2010, GMCo will initiate a one-time option for participants represented by the IUE-CWA, the USW and Splinter Unions that elect to participate to elect to voluntarily decline participation in the plan and in exchange for a monetary buyout in the amounts set forth on the Opt-Out Payment Schedule on Attachment D hereto. Thereafter, the one-time option will be offered to eligible retirees at the inception of their participation in the plan. All elections to opt-out of the plan are final and cannot later be revoked.

g.  The Parties agree that GMCo shall have the right to modify or amend the Plan design consistent with its effort to implement the Cap.

h.  The IUE-CWA, USW, Splinter Unions that elect to participate and all retirees/members within the scope of this agreement will not in the future seek to negotiate any modifications or changes to the health care benefits provided by GMCo.

i.  All obligations of MLC, the MLC Plan and any other MLC entity or benefit plan for health care in retirement for members of the Covered Group or any other person claiming

entitlement to health care in retirement pursuant to an IUE-CWA or USW collective bargaining agreement other than as set forth herein shall be forever terminated as of the Effective Date.

j.    For 2017 (plan year beginning January 1, 2017 and ending December 31, 2017), GMCo will configure Plan design such that the aggregate annual premium, deductible and out of pocket maximum values are equivalent to the values in the Plan design in effect for the Plan year beginning January 1, 2016. Due to timing issues, GMCo will initially implement a higher level of premiums for the Plan period beginning January 1, 2017, but will, as soon as possible thereafter, adjust premiums for continuing participants such that annualized participant expenditures for the Plan year beginning January 1, 2017 are equivalent to the Plan design in effect for the Plan year beginning January 1, 2016.

k.    Subject to GMCo's contributions to retiree health care reaching the Adjusted Value, upon the occurrence of the first of: (i) commencement of the Plan year 2027, or (ii) commencement of the first Plan year in which the total number of the contracts in the Plan falls below 500, GMCo may implement, in its discretion, either of, or a combination of both of, the following:

    (i)    GMCo will convert the Plan to a Health Reimbursement Arrangement ("HRA")-type tax advantaged health-reimbursement account (depending on the legal reimbursement options then available for retiree plans), and will contribute the amount of $8,000 per active contract per Plan year to, if then available, a tax-advantaged account; or

    (ii)    GMCo will offer to buy out the remaining participant contracts by offering the participant the present-value actuarial equivalent of the HRA-type Plan described in Paragraph 5(k)(i) above for the number of years for which they will remain eligible for benefits under the Plan, up to a maximum of 10 years (except for active employees of GMCo as of the effective date of this Agreement who do not elect to receive the buyout described in Section 5(f), for whom the maximum years will be 14), conditioned upon Participants' executing full releases of claims satisfactory to GM. To accomplish this, GMCo will pay a one-time lump sum payment per active contract equal to the present value of the payments that would be made under Paragraph 5(k)(i) above for the period of time that the youngest of the primary participant or their spouse (or surviving spouse in the event of the primary participant's death) would be covered under the retiree health care Plan, to a maximum of 10 years. For those who are retirement-eligible, but who have not yet commenced participation in the retiree health care Plan, GMCo will make a one-time lump sum payment equal to the present value of the payments that would be made under Paragraph 5(k)(i) above for the period of time that the youngest of the primary participant or their spouse (or surviving spouse in the event of the primary participant's death) would be covered under the retiree health care Plan, up to a maximum of ten 10 years. For those participants who have not yet attained eligibility for retirement, GMCo will make a one-time lump sum payment equal to the present value of up to 10 years of payments that would have been made under Paragraph 5(k)(i) above had the participant commenced receipt of benefits under the Plan. Notwithstanding the foregoing, for those participants who have not yet attained eligibility for retirement but who have been continuously employed by GMCo and are

active employees at the time of the events described in this paragraph 5(k), GMCo will make a one-time lump sum payment equal to the present value of up to 14 years of payments that would have been made under Paragraph 5(k)(i) above had the participant commenced receipt of benefits under the Plan.For purposes of calculating the present value, the discount rate shall be calculated as of the last business day of the year, and shall be the same rate that is used by GMCo's actuary to measure the Accumulated Post-Retirement Benefit Obligation for the non-UAW Retiree Health Care Plan.

l. The Plan design for Plan years 2018 and 2019 shall include the following:

2018 (in dollars)

|  | Indiv | Indiv + 1 | Fam |
|---|---|---|---|
| Premiums | 51 | 103 | 154 |
| Deductible | 3,000 | 6,000 | 6,000 |
| Out of Pocket | 4,000 | 8,000 | 8,000 |

Maximums 2019 (in dollars)

|  | Indiv | Indiv + 1 Fam | |
|---|---|---|---|
| Premiums | 79 | 159 | 238 |
| Deductible | 3,000 | 6,000 | 6,000 |
| Out of Pocket Maximums | 4,000 | 8,000 | 8,000 |

The Plan design for Plan year 2020 and for each Plan year thereafter shall be subject to the limits of the Cap, and reflect the adjustment required to be made to Plan design by Paragraph 5(c) hereof, in the event GMCo has spent more than the Cap; provided further, it is understood that in no event shall GMCo's spending obligation under the Plan exceed the Adjusted Value.